10-15387

_____

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

SAMUEL MICHAEL KELLER,

*Plaintiff and Appellee,*

v.

ELECTRONIC ARTS INC.,

*Defendant and Appellant.*

_____

On Appeal from an Order of the United States District Court
for the Northern District of California,
The Honorable Claudia A. Wilken
Case No. 3:09-CV-01967-CAW

_____

**ELECTRONIC ARTS INC.'S CONSOLIDATED RESPONSE TO MOTION FOR LEAVE TO FILE SUPPLEMENTAL *AMICUS CURIAE* BRIEF AND MOTION FOR LEAVE TO PARTICIPATE IN ORAL ARGUMENT AND TO ALLOW ADDITIONAL TEN MINUTES FOR ORAL ARGUMENT**

_____

DAVIS WRIGHT TREMAINE LLP
KELLI L. SAGER - #120162
ALONZO WICKERS IV - #169454
KAREN A. HENRY - #229707
865 S. Figueroa Street, Suite 2400
Los Angeles, California 90017
Telephone: (213) 633-6800
Facsimile: (213) 633-6899

KEKER & VAN NEST, LLP
ROBERT A. VAN NEST - #84065
STEVEN A. HIRSCH - #171825
R. JAMES SLAUGHTER - #193813
710 Sansome Street
San Francisco, California 94111
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

Attorneys for Defendant/Appellant
Electronic Arts Inc.

**TABLE OF CONTENTS**

Page

1. SUMMARY OF ARGUMENT ........................................................................1

2. THE UNIONS' REQUEST TO FILE A SUPPLEMENTAL *AMICI* BRIEF SHOULD BE DENIED ........................................................................3

   A. The Unions Already Have Filed An *Amici* Brief. .................................3

   B. The Court Does Not Need More Briefing On *No Doubt*, *Hart*, *Davis*, Or Any Other Opinion Issued Since The February 2011 Argument. ...............................................................................................4

   C. The Unions' First *Amici* Brief Sets Forth Their Position On The Transformative-Use Test And The Predominant-Use Test ..................5

   D. The Unions' Flawed Arguments Would Not Assist The Court In Resolving This Appeal. .......................................................................5

      1. The Transformative-Use Test ......................................................5

      2. The Predominant-Use Test .........................................................8

3. THE UNIONS' REQUEST TO PARTICIPATE IN ORAL ARGUMENT SHOULD BE DENIED. ........................................................10

4. CONCLUSION ...............................................................................................11

# TABLE OF AUTHORITIES

Page

**CASES**

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
  448 F.3d 605 (2d Cir. 2006) ...................................................................7

*Bleinstein v. Donaldson Lithographing Co.*,
  188 U.S. 239 (1903) ...............................................................................9

*C.B.C. Distributing and Marketing v. Major League Baseball Advanced Media*,
  443 F. Supp. 2d 1077 (E.D. Mo. 2006) .................................................9

*C.B.C. Distribution and Marketing v. Major League Baseball Advanced Media*,
  505 F.3d 818 (2007) ...............................................................................9

*Campbell v. Acuff-Rose Music*,
  510 U.S. 569 (1994) ...............................................................................7

*Comedy III Prods. v. Gary Saderup, Inc.*,
  25 Cal. 4th 387 (2001) .......................................................................6, 7

*Davis v. Electronic Arts*,
  CV10-03328-RS (N.D. Cal. March 29, 2012) ................................1, 2, 4

*Doe v. TCI Cablevision*,
  110 S.W.3d 363 (Mo. 2003) .........................................................8, 9, 10

*Fry v. Exelon Corp. Cash Balance Pension Plan*,
  576 F.3d 723 (7th Cir. 2009) ..............................................................3, 4

*Hart v. Electronic Arts*,
  808 F. Supp. 2d 757 (D.N.J. 2011) ..........................................1, 2, 4, 11

*Kirby v. Sega of America, Inc.*,
  144 Cal. App. 4th 47 (2006) ..................................................................9

*LaRue v. DeWolff, Boberg & Assocs.*,
  458 F.3d 359 (4th Cir. 2006) .................................................................3

*No Doubt v. Activision*,
    192 Cal. App. 4th 1018 (2011) ...................................................................1, 2, 4

*Perfect 10 v. Amazon.com*,
    508 F.3d 1146 (9th Cir. 2007) ..............................................................................7

*Winter v. DC Comics*,
    30 Cal. 4th 881 (2003) ..........................................................................................6

**RULES**

Federal Rule of Appellate Procedure 28(j) ............................................................2, 4

Federal Rule of Appellate Procedure 29 ....................................................................3

Federal Rule of Appellate Procedure 29(e) ...............................................................3

Federal Rule of Appellate Procedure 29(g) .............................................................10

**CONSTITUTIONAL PROVISIONS**

United States Constitution, First Amendment ...............................................5, 6, 8, 9

**OTHER AUTHORITIES**

2 McCarthy, *Rights of Publicity* § 8:82 .....................................................................9

David S. Welkowitz & Tyler T. Ochoa, *The Terminator as Eraser: How Arnold Schwarzenegger Used the Right of Publicity to Terminate Non-Defamatory Political Speech*, 45 Santa Clara L. Rev. 651 (2005) ........................8

Defendant/Appellant Electronic Arts Inc. ("EA") respectfully submits the following Consolidated Response to the Motion for Leave to File Supplemental *Amici Curiae* Brief and Motion for Leave to Participate in Oral Argument and to Allow Additional Ten Minutes for Oral Argument filed by *amici curiae* the Major League Baseball Players Association, the National Football League Players Association, the National Basketball Players Association, the National Hockey League Players' Association, and the Major League Soccer Players Union (collectively "the Unions").

## 1. SUMMARY OF ARGUMENT

With the consent of all parties, the Unions filed a 28-page *amici* brief in November 2010. Dkt. Entry 41. Without the consent of all parties, the Unions now ask for this Court's permission to file an untimely – and even longer – supplemental *amici* brief. Dkt. Entry 123-1. Because the Unions fail to offer any persuasive justification for filing a second *amici* brief, the Court should deny their motion.

According to the Unions, their supplemental brief would assist the Court by addressing three opinions that were issued after the first argument in this case: *No Doubt v. Activision*, 192 Cal. App. 4th 1018 (2011); *Hart v. Electronic Arts*, 808 F. Supp. 2d 757 (D.N.J. 2011); and *Davis v. Electronic Arts*, CV10-03328-RS (N.D. Cal. March 29, 2012). Dkt. Entry 123-1 at 2-3; *see also* Proposed Suppl. *Amici*

1

Brief ("PSAB") at 3, 9-17. But these cases have been more than amply briefed by the parties. At the Court's instruction, the parties filed ten-page supplemental briefs discussing *No Doubt* (*see* Dkt. Entries 89, 90), and they subsequently have filed ten Rule 28(j) letters discussing *Hart*, *Davis*, and other recent opinions that one side or the other believed to be relevant to the issues presented in this appeal (*see* Dkt. Entries 85, 93-97, 101, 103-1, 107-1, 111-1 and 112-1). The Court should not grant the Unions the highly unusual privilege of filing a second *amici* brief to address these opinions.

Nor do the Unions need to file another brief to address the proper construction of the transformative-use test or, alternatively, to urge this Court to adopt the Missouri Supreme Court's predominant-use test. Dkt. Entry 123-1 at 2-3; *see also* PSAB at 8-24. The Unions discussed the transformative-use test in their first *amici* brief (*see* Dkt. Entry 41 at 3), and the parties and other *amici* have exhaustively discussed this test in their briefs. *See* Dkt. Entries 18-1 at 24-36; 25 at 5-13; 26-2 at 3-11; 37 at 25-37; 42 at 11-18; and 57 at 9-13 and 31-33. The Unions' first brief also urged the Court to adopt the predominant-use test (*see* Dkt. Entry 41 at 9 n.4), which never has been endorsed by any court other than the Missouri Supreme Court and has been widely criticized by commentators.

The Court likewise should deny the Unions' request – which is opposed by both parties – to expand oral argument and allocate ten minutes of argument to the

Unions' counsel. The Unions' interests are essentially indistinguishable from Keller's, and will be more than adequately represented at argument by Keller's counsel. *See* Dkt. Entry 128-1 at 1-2.

## 2. THE UNIONS' REQUEST TO FILE A SUPPLEMENTAL *AMICI* BRIEF SHOULD BE DENIED.

### A. The Unions Already Have Filed An *Amici* Brief.

Under Rule 29(e), any *amicus* brief must be filed within seven days after the principal brief of the party that the *amicus* supports. This deadline allows the opposing party to respond to the *amicus*' arguments in its next scheduled brief; the appellee may respond in its principal brief to the arguments raised by any *amici* supporting the appellant, and the appellant may respond in its reply brief to the arguments raised by any *amici* supporting the appellee. *See Fry v. Exelon Corp. Cash Balance Pension Plan*, 576 F.3d 723, 725 (7th Cir. 2009) (Easterbrook, C.J.). Not surprisingly, untimely *amicus* briefs are "disfavored." *LaRue v. DeWolff, Boberg & Assocs.*, 458 F.3d 359, 361 (4th Cir. 2006).

Here, Keller filed his appellee's brief on October 29, 2010. *See* Dkt. Entry 37. Any *amici* supporting Keller thus were required to file their briefs by November 5, 2010, the date on which the Unions filed their first *amici* brief (with EA's consent). *See* Dkt. Entry 41. Rule 29 does not contemplate that an *amicus* may file more than one brief in an appeal, and the Unions do not offer any justification for granting them such an unusual privilege, particularly at this late

3

stage. Their request to file a supplemental *amici* brief should be denied for this reason alone.[1]

### B. The Court Does Not Need More Briefing On *No Doubt*, *Hart*, *Davis*, Or Any Other Opinion Issued Since The February 2011 Argument.

In deciding whether to grant an untimely request to file an *amicus* brief, a court may consider "the value of the proposed *amicus* brief." *Fry*, 576 F.3d at 725. In "exceptional" circumstances, the value of the brief may justify granting the *amicus* leave to file the brief. *Id.*

The Unions insist that their proposed brief would be valuable to the Court because it addresses three right-of-publicity opinions that were decided since oral argument: *No Doubt*, *Hart*, and *Davis*. But these (and other) decisions already have been brought to the Court's attention and briefed by the parties. For example, Keller notified the Court about the *No Doubt* decision on February 16, 2011 – well over a year ago. *See* Dkt. Entry 85. At the Court's instruction, the parties to this appeal and to the coordinated appeal in *Brown v. Electronic Arts* then filed ten-page supplemental briefs discussing *No Doubt*. *See* Dkt. Entries 89, 90; *Brown* Dkt. Entries 61-1 and 62. The parties also filed Rule 28(j) letters and responses addressing *Hart*, *Davis*, and three other opinions issued after the first argument. *See* Dkt. Entries 93-97, 101, 103-1, 107-1, 111-1 and 112-1. Consequently, the

---

[1] Even with respect to the ten different Rule 28(j) letters, the Unions made no effort to submit *amici* responses at the time the letters were filed.

4

Court does not need the Union to file a second *amici* brief to identify these cases or to address their potential impact on this appeal.

**C.    The Unions' First *Amici* Brief Sets Forth Their Position On The Transformative-Use Test And The Predominant-Use Test.**

The Unions also contend that this Court should grant them leave to file a second *amici* brief to address the "proper scope and application of the California Supreme Court's 'transformative-use' test," and to urge the Court to replace that test with the predominant-use test. Dkt. Entry 123-1 at 3-4. But the Unions' first *amici* brief addressed these issues. Specifically, the Unions supported Keller's interpretation of the transformative-use test, arguing that the test turns on whether the *plaintiff's name or likeness in isolation* has been physically transformed, rather than on whether the *defendant's work* is transformative. Dkt. Entry 41 at 3, 9. And the Unions already argued that the Missouri Supreme Court's predominant-use test "best captures the intermediate scrutiny test of relevant First Amendment jurisprudence," and should be used to balance the First Amendment and the right of publicity in this Circuit. *Id.* at 9 n.4. The Unions' proposed supplemental brief merely expands upon these arguments. PSAB at 8-24.

**D.    The Unions' Flawed Arguments Would Not Assist The Court In Resolving This Appeal.**

    **1.    The Transformative-Use Test**

Discussing transformative use, the Unions simply echo Keller's claim that the test should focus on *his depiction alone*, rather than on *NCAA Football's* entire

5

creative football world.  PSAB at 8-18; Dkt. Entry 37 at 27-36.  From this premise, the Unions argue that the transformative-use test protects only those works that physically distort a plaintiff's likeness or place the plaintiff in a counter-factual setting.  PSAB at 8-18.  That argument is inconsistent with cases establishing and applying the transformative-use test and the copyright fair-use doctrine from which the transformative-use test derives, and would lead to illogical results inconsistent with the First Amendment.

First, the Unions' argument is inconsistent with how the California Supreme Court and other courts have applied the transformative-use test.  As discussed in EA's Opening Brief, in *Comedy III Prods. v. Gary Saderup, Inc.*, 25 Cal. 4th 387 (2001), the court instructed that the transformative-use test does *not* turn on whether the plaintiff's likeness, viewed in isolation from the rest of the work, is physically transformed.  Instead, the court explicitly instructed that the transformative-use test requires courts to evaluate the defendant's work as a whole, not just the celebrity's depiction.  *Id.; see also* Dkt. Entry 18-1 at 24-27.[2]

---

[2] In both *Comedy III* and *Winter v. DC Comics*, 30 Cal. 4th 881, 890 (2003), the California Supreme Court also emphasized that "the transformative elements or creative contributions that require First Amendment protection *are not confined to parody and can take many forms*," from "factual reporting," to "fictionalized portrayal," to "subtle social criticism." *Comedy III*, 25 Cal. 4th at 406 (citations omitted).  Because those forms of expression often do not involve *any* physical transformation of an individual's name or likeness, the Unions err by making such transformation an essential element of the defense.  *See* Dkt. Entry 18-1 at 29-30.

6

Second, the Unions' interpretation of the transformative-use test overlooks its origins in copyright's fair-use defense,[3] which focuses on whether the allegedly infringing work "merely 'supersede[s]" the original work or "instead adds something new[.]" *Campbell v. Acuff-Rose Music*, 510 U.S. 569, 579 (1994); *see* Dkt. Entry 18-1 at 32-34. Courts regularly find fair use when the defendant has used the plaintiff's work without alteration. *See, e.g.*, *Campbell*, 510 U.S. at 581 ("a book review quoting the copyrighted material criticized"); *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 608-609 (2d Cir. 2006) (a biography of The Grateful Dead that included unaltered copyrighted concert posters); *Perfect 10 v. Amazon.com*, 508 F.3d 1146, 1164-1165 (9th Cir. 2007) (search engine's use of thumbnail copies of copyrighted photographs).

Third, the Unions' restrictive interpretation of the transformative-use test would lead to entirely illogical results; the use of someone's actual name or realistic image within an expressive work always would be actionable. But documentarians, biographers, filmmakers, novelists, photographers, songwriters, and many others do exactly what the Unions suggest is not protected: they create expressive works that realistically depict individuals and/or refer to them by their actual names. *See* Dkt. Entry 18-1 at 31, 34.

---

[3] S*ee Comedy III*, 25 Cal. 4th at 404-405.

7

## 2. The Predominant-Use Test

The Unions' discussion of the predominant-use test would not assist the Court either. PSAB at 18-24. That highly subjective test, which was articulated by the Missouri Supreme Court in *Doe v. TCI Cablevision*, 110 S.W.3d 363 (Mo. 2003), is incompatible with the First Amendment and has been rejected by every other court that has considered it. *See* Dkt. Entry 57 at 31-32. *Doe* stands alone; tellingly, the Unions cite no case other than *Doe* itself that has adopted the predominant-use test, and cite no commentator who has endorsed the test other than counsel for the appellant in *Brown v. Electronic Arts*. PSAB at 19.

*Doe*'s predominant-use test posits that "[i]f a product is being sold that predominantly exploits the commercial value of an individual's identity, that product should be held to violate the right of publicity and not be protected by the First Amendment, even if there is some 'expressive' content in it that might qualify as 'speech' in other circumstances." 110 S.W.3d at 374. This focus on the content creator's alleged profit motive, rather than the nature of the work, violates longstanding First Amendment precedent that a creator's profit motive is irrelevant to a work's constitutional protection. As one law review article put it: "The U.S. Supreme Court has held that whether speech is sold for profit is legally irrelevant to whether it receives protection under the First Amendment, yet *Doe* holds that a profit motive can disqualify speech from First Amendment protection." David S.

8

Welkowitz & Tyler T. Ochoa, *The Terminator as Eraser*, 45 Santa Clara L. Rev. 651, 670 (2005).

The predominant-use test also asks courts (or jurors) to make the highly subjective determination as to the "predominant" reason that a person's name or likeness was included in an expressive work. Leaving determinations about whether a publication was meant to be informative or merely exploitative to judges and jurors is something courts have long rejected. *See, e.g., Bleinstein v. Donaldson Lithographing Co.*, 188 U.S. 239, 251 (1903) (Holmes, J.) ("[i]t would be a dangerous undertaking for persons trained only to the law to constitute themselves final judges of the worth of [a work], outside of the narrowest and most obvious limits"); 2 McCarthy, *Rights of Publicity* § 8:82 (indicating that the *Doe* test is "wrong" because the court "second-guessed the literary and artistic decision made by the comic book author to name a character"); *see also* Dkt. Entry 57 at 31.

It is for these independent reasons, therefore, that no other court has adopted the predominant-use test.[4] Given the test's many infirmities, the Unions'

---

[4] Tellingly, the Eighth Circuit ignored the test in *C.B.C. Distribution and Marketing v. Major League Baseball Advanced Media*, 505 F.3d 818 (2007), a right-of-publicity case involving the use of athletes' names and likenesses that arose under Missouri law. *See also C.B.C. Distributing and Marketing v. Major League Baseball Advanced Media*, 443 F. Supp. 2d 1077, 1096 n.26 (E.D. Mo. 2006) (declining to adopt *Doe* in fashioning a First Amendment balancing test for right-of-publicity claims); *Kirby v. Sega of America, Inc.*, 144 Cal. App. 4th 47, 58

9

discussion of the test would have no value for the Court, and does not remotely justify a second *amici* brief.

### 3. THE UNIONS' REQUEST TO PARTICIPATE IN ORAL ARGUMENT SHOULD BE DENIED.

While Federal Rule of Appellate Procedure 29(g) generally gives courts discretion to permit *amici* to participate in oral argument, the comments to that rule make clear that such a request should be granted *only* when one of the parties is willing to share its argument time. *See* Fed. R. App. P. 29(g), 1998 Advisory Committee Notes. Where, as here, all parties oppose an amicus' request for oral argument, it should not be granted "absent extraordinary circumstances." *See id.* The Unions do not come close to meeting that standard.

To justify their request, the Unions baldly assert that their members have a "unique and substantial interest in the issues on appeal." Dkt. Entry 124-1 at 1. Importantly, however, the Unions fail to articulate how their members' interests differ from Keller's, or why Keller's counsel cannot adequately represent those interests at argument. As Keller acknowledges, there are no extraordinary circumstances here that warrant allowing the Unions *any amount of time* for oral

---

(2006), (refusing plaintiff's invitation to "refine" the transformative-use test by drawing on *Doe*).

10

argument, (*see* Dkt. Entry 128-1 at 1-2), let alone ten minutes. Consequently, the Unions' request should be denied.[5]

## 4. CONCLUSION

When the Court set this matter for re-argument, it did not instruct the parties to file supplemental briefs. Nor should it permit the Unions to file a second *amici* brief. The Unions' request to participate in oral argument also should be rejected. Their members stand in same shoes as Keller – athletes who claim a right to control the use of their names and likenesses in EA's expressive work – and their interests are more than adequately represented by Keller.

---

[5] If the Unions are afforded ten additional minutes at oral argument, then that same opportunity for ten additional minutes at oral argument should be made available to the thirty-one media and entertainment entities that joined *amici* briefs in support of EA in this case. That these *amici* include such diverse content creators as the Motion Picture Association of America ("MPAA"), ESPN, Viacom, the Los Angeles Times, the Association of American Publishers, Wenner Media, and the Comic Book Legal Defense Fund – and that a coalition of twenty-nine media entities including The New York Times, Dow Jones, and National Public Radio, a group of concerned law professors, and the MPAA filed *amici* briefs in support of EA in the *Hart* case in the Third Circuit (*see* Third Circuit Case No. 11-3750, Documents No. 003110908299, 003110908615, and 003110908893) – makes clear that this Court's decision will be of paramount importance to all creators of expressive works.

11

EA, therefore, respectfully requests that the Court deny both motions.

RESPECTFULLY SUBMITTED this 24th day of May, 2012.

>DAVIS WRIGHT TREMAINE LLP
>KELLI L. SAGER
>ALONZO WICKERS IV
>KAREN A. HENRY
>
>KEKER & VAN NEST
>ROBERT A. VAN NEST
>STEVEN A. HIRSCH
>R. JAMES SLAUGHTER
>
>By /s/ Kelli L. Sager
>         Kelli L. Sager
>
>Attorneys for Defendant/Appellant
>ELECTRONIC ARTS INC.

| 9th Circuit Case Number(s) | 10-15387   Keller v. Electronic Arts Inc. |
|---|---|

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

### CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) **May 24, 2012**.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format)     **/ s / Yvonne Godson**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

### CERTIFICATE OF SERVICE
### When Not All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) _____.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format)