No. 10-15387

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### SAMUEL MICHAEL KELLER,
*Plaintiff-Appellee,*

v.

### ELECTRONIC ARTS, INC.,
*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
CASE NO. 4:09-CV-01967-CW

**CONSOLIDATED REPLY BRIEF IN SUPPORT OF MOTION FOR
LEAVE TO FILE SUPPLEMENTAL AMICUS BRIEF AND
MOTION FOR LEAVE TO PARTICIPATE IN ORAL ARGUMENT,
BY THE NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION,
THE MAJOR  LEAGUE BASEBALL PLAYERS ASSOCIATION, THE
NATIONAL HOCKEY LEAGUE PLAYERS' ASSOCIATION,
THE NATIONAL BASKETBALL PLAYERS ASSOCIATION,
AND THE MAJOR LEAGUE SOCCER PLAYERS UNION**

Michael Rubin
P. Casey Pitts
Altshuler Berzon LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Ph:  (415) 421-7151
Fax: (415) 362-8064
mrubin@altber.com
*Attorneys for Player Association Amici*

(Additional Counsel on Next Page)

## ADDITIONAL COUNSEL FOR AMICI

DeMaurice Smith
Executive Director
National Football League Players Association
1133 20th Street
Washington, DC 20036
Ph: (202) 756-9100

Michael S. Weiner
Executive Director and General Counsel
Major League Baseball Players Association
12 East 49th Street, 24th Floor
New York, NY 10017
Ph: (212) 826-0808

Donald Fehr
Executive Director
National Hockey League Players' Association
20 Bay Street Suite 1700
Toronto, ON
M5J 2N8
Ph: (416) 313-2300

G. William Hunter
Executive Director
National Basketball Players Association
310 Lenox Avenue
New York, NY 10027
Ph: (212) 655-0880

Robert Foose
Executive Director
Major League Soccer Players Union
7605 Arlington Road, Suite 250
Bethesda, MD 20814
Ph: (301) 657-3535

Defendant-appellant Electronic Arts, Inc.'s principal ground for opposing Amici Player Associations' proposed supplemental amicus brief is that it disagrees with the substance of the Player Associations' analysis. While EA acknowledges that courts may allow late-filed amicus briefs that provide new or useful perspectives on pending issues, EA Consol. Response at 4, here it contends that the Player Associations' proposed supplemental brief "would not assist the Court in resolving this appeal" because Amici's legal and factual arguments are "flawed" and unconvincing. *Id*. at 4-10.

If the issues on this appeal were as easy as EA's Consolidated Response Brief suggests, the reconstituted panel would not have scheduled a second oral argument for July 13, 2012. In fact, the number and variety of party and amicus briefs filed to date (both pre- and post-argument) and the conflicting decisions on nearly identical facts in recent cases like *Hart* and *Davis* illustrate just how difficult it is to strike the appropriate balance between state law publicity rights and the First Amendment, especially in the area of hyper-realistic sports video games like "NCAA Football" and "NCAA Basketball."

Amici Player Associations understand that the issues before the panel are difficult and that the factual record in this case is somewhat scant, given the anti-SLAPP context in which this appeal arose. Mindful of those circumstances, Amici

have proposed a new and different approach to analyzing the issues, rooted in the balancing principles that the Supreme Court required in *Zacchini v. Scripps-Howard Broadcasting Co.*, 433 U.S. 562 (1977), which focuses on the specific expressive and non-expressive attributes of EA's sports video games that have made these games such great popular successes in recent years.

EA has made clear its disagreement with Amici's analysis.[1] Yet that is no reason for the panel not to consider the Player Associations' arguments – either in written form, as presented in the proposed Supplemental Amicus Brief, or as orally presented by Amici's counsel at the upcoming July 2012 hearing. Certainly EA has not identified any prejudice – either to itself or to the Court – that would result from the panel's consideration of Amici's arguments.

From Amici's perspective, the most critical fact in this case is one that remains entirely uncontested – which is that EA's games would have the exact

---

[1]  In part, EA's disagreement reflects a misreading of Amici's arguments. EA contends, for example, that Amici would protect "only those works that physically distort a plaintiff's likeness or place the plaintiff in a counter-factual setting." EA Consol. Response at 4. However, Amici expressly acknowledge that the First Amendment *does* protect the realistic use of a celebrity's likeness in a realistic setting, if – as in satire, biography, fictionalization, and criticism – that *use* is of the celebrity's likeness is expressive, and not simply an attempt to exploit the subject's commercial value. *See, e.g.*, Proposed Supp. Amicus Br. at 21 (explaining why *Forrest Gump*'s use of realistic setting and real people is protected by the First Amendment).

same functionality, interactivity, and expressiveness if, instead of appropriating the hyper-realistic likeness of actual college athletes like Samuel Keller, EA had populated its games with anonymous stock characters that game users could modify, or not, as they chose. EA goes to great lengths to argue that its video games are "expressive" works as a whole, with "creative elements" such as digitally created crowd noise, the crunch of shoulder pads, and other effects that simulate the realism of an actual game. Yet there is nothing creative, and certainly nothing transformative, about using the appropriated likenesses of actual, well-known players in the games at issue. Those video games would be just as "expressive," just as "interactive," and would operate in precisely the same manner, if game users could create their own player personas from scratch, or use stock characters provided by EA that do not replicate actual gridiron heros. After all, "NCAA Football" and "NCAA Basketball" do not tell a story; do not recreate actual history; and do not satirize or parody well-known personalities. They are just interactive sports games that, like the team jerseys and helmets sold at real college football stadiums, allow users to identify with and pretend to become their favorite college athletes.

The question for the panel is how this central reality of sports video games affects the required balancing of First Amendment and right-of-publicity interests.

-3-

In particular, the panel must decide how to articulate a test that would most appropriately balance those interests, as *Zacchini* requires, in light of the fact that EA's games would be just as expressive, and would operate in precisely the same manner, if those games did not infringe upon the college athletes' state law right of publicity. That is the question Amici set out to answer in their proposed Supplemental Brief, and that Amici propose to discuss with the panel at oral argument, if permitted.

No prejudice would result from considering the views of Amici, and EA does not identify any. To the contrary, there is benefit in hearing the different perspectives of interested and knowledgeable amici, such as the Players Association. The panel itself, not EA, should be the ultimate judge of whether those perspectives are useful or persuasive.

Moreover, while EA suggests that other amici might also have valuable insights to share with the panel, none of those other amici have sought leave to participate. Given the special setting of this re-argument on July 13, 2012, there should be ample time for Amici's presentation, even if the Court extends EA an additional 10 minutes for its own response.

For the reasons stated, Amici request that the Court permit the filing of their proposed supplemental amicus brief and permit their participation through counsel

-4-

at the upcoming oral argument.

Dated:  May 29, 2012                    Respectfully submitted,

                                       MICHAEL RUBIN
                                       P. CASEY PITTS
                                       Altshuler Berzon LLP


                                       By:  /s/Michael Rubin
                                              Michael Rubin

                                       Attorneys for *Amici Curiae* National Football
                                       League Players Association, Major League
                                       Baseball Players Association, National Hockey
                                       League Players' Association, National Basketball
                                       Players Association, and the Major League Soccer
                                       Players Union